IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

FRED CARPENTER,

          Plaintiff,

v.

OLIN CORPORATION,
WINCHESTER AMMUNITION, INC.,
OLIN WINCHESTER, LLC, and
DAVE HASKINS,

          Defendants.

Case No. 3:23-CV-00759-NJR

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiff Fred Carpenter, an African American male, began working for Defendant Winchester Ammunition, Inc. ("Winchester Ammunition") at its East Alton, Illinois, plant in April 2012. (Doc. 24, p. 1). During the relevant period, Carpenter served as the Director of Human Resources and Security and Medical at the East Alton ammunition manufacturing plant. (*Id.*). In this position, Carpenter negotiated labor union contracts, received and investigated employee discrimination complaints, oversaw security procedures and activities, served on the Joint Explosives Committee, and met with employees outside of corporate headquarters. (*Id.* at pp. 5, 6). Alongside Winchester Ammunition, Defendants Olin Corporation and Olin Winchester, LLC (collectively "Olin") jointly operated the ammunition production business from East Alton, Illinois, and St. Louis, Missouri, manufacturing and selling ammunition to private businesses and the federal government. (*Id.* at p. 1).

According to Carpenter, back in 2017, Mildrine Clark, an African American female employee at Winchester Ammunition complained to him about racial and sex-based discrimination in the company's promotion process within the Primer Department. (*Id.* at pp. 5-6). Upon investigation of this complaint, Carpenter discovered improprieties in the hiring process for a new supervisor within the Primer Department and reported his findings to several Winchester Ammunition executives: Steve Goldschmidt (Vice President of Production), Ted Zimmerman (Vice President of Human Resources), and Mike Tinsley (Director of Production). (*Id.* at p. 6). The complaining employee, Clark, filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination from Olin. (*Id.*). Carpenter alleges that he participated in the attendant EEOC investigation and hearing. (*Id.*).

In April 2019, Carpenter provided sworn testimony in Olin's internal investigation regarding a sex-based hostile work environment claim from a female labor representative, Jennifer Emery, who reported to Carpenter. (*Id.* at p. 7). Emery's complaint involved Zimmerman, Winchester Ammunition's Vice President of Human Resources. (*Id.*). A month after the investigation, Olin terminated Zimmerman and his position became vacant. (*Id.*). But a week later, Brett Flaugher (President of Winchester Ammunition) and Val Peters (Vice President of Human Resources for Olin Corporation) purportedly told Carpenter that Zimmerman's former position had been eliminated. (*Id.*). Relying on this information, Carpenter did not apply to the vacant Vice President of Human Resources position at Winchester Ammunition. (*Id.* at p. 8). Carpenter asserts that he possessed the necessary qualifications for the position, which paid greater salary and benefits than his

director-level position. (*Id.* at p. 9). Flaugher and Peters blind-sided Carpenter, in August 2020, with the news that Olin hired Defendant Dave Haskins, who is Caucasian/Korean and purportedly less qualified, to fill the position instead. (*Id.*).

Spanning from October 2019 to March 2021, Carpenter experienced harassment and a hostile work environment at the hands of Flaugher and Peters. (*Id.* at p. 7). Specifically, on October 11, 2019, Flaugher purportedly blamed Carpenter for Zimmerman's discharge. (*Id.*). During this conversation, Flaugher also labeled Carpenter as a renegade who needed to be a team player. (*Id.* at p. 8). Flaugher warned Carpenter that if his conduct ever needed addressing, he "would not like the results." (*Id.*). Flaugher also informed Carpenter of his new supervisor, Mike Bokerman in the Legal Department, describing Bokerman as a good guy and cautioning Carpenter against giving him any trouble. (*Id.*).

A year later, in November 2020, Bokerman communicated to Carpenter that senior management carried the perception that Carpenter required a close watch. (*Id.*). Bokerman encouraged Carpenter that he intended to correct this negative perception. (*Id.*). Carpenter spoke with Haskins in March 2021, who explained that Carpenter's office was moving back to corporate headquarters because of Flaugher's perceptions that Carpenter was not performing his job and needed more supervision. (*Id.* at pp. 8, 10).

Between July 2020 and March 2021, Carpenter alleges that Haskins, Chuck Hirschberg (Director of Production at Winchester Ammunition), and Lindsay Turner (Human Resource Manager at Winchester Ammunition) harassed him. (*Id.* at p. 9). More specifically, Carpenter claims that Hirschberg, Turner, and another employee, Kim Murphy, challenged Carpenter concerning his assistance to Corliss Mitchell, a female

foreman in the Primer Island Department, with her racial and sex-based discrimination complaints.[1] (*Id.*). When Carpenter attempted to investigate Mitchell's claims, Olin and Winchester Ammunition intervened and counseled Mitchell against complaining to Carpenter about her supervisors' discriminatory conduct. (*Id.* at p. 7). Instead, Mitchell received instruction to keep her complaints within the Primer Island Department. (*Id.*).

According to Carpenter, Haskins relayed false information about Carpenter to other employees, including that Carpenter spoke negatively about his human resources colleagues. (*Id.* at p. 9). Haskins also purportedly surveyed other employes about whether Carpenter had any sexual relationships with his employees. (*Id.* at p. 10). In March 2021, Haskins suspended Carpenter with pay for 12 days under false allegations that Carpenter falsified documents by paying employees who worked remotely during the COVID-19 pandemic. (*Id.*). The day after imposing the suspension, Haskins allegedly interviewed a union committee chairman to investigate Carpenter's practices of advising employees to contact the EEOC or Illinois Department of Human Rights ("IDHR") to report violations of discrimination laws at Winchester Ammunition. (*Id.*). Apparently, among Carpenter's subordinates, Turner theorized that Carpenter helped Mitchell write her IDHR charge due to her illiteracy, which she implied was related to Mitchell's race. (*Id.*). Turner also purportedly claimed that Carpenter threatened her after he suggested that subjecting Mitchell to an employee interview, when Turner was dating another employee competing

---

[1] Carpenter alleges that Mitchell first complained about discrimination to Carpenter in December 2021. Other allegations seem to indicate that Carpenter experienced harassment for helping Mitchell from July 2020 to March 2021. As such, it is unclear whether this employee alerted Carpenter to the discrimination before December 2021. (*See* Doc. 24, pp. 6, 9).

for the same position who was not required to interview, would be inappropriate. (*Id.*).

Winchester Ammunition and Olin initiated an ethics complaint against Carpenter because of his investigation into the potentially discriminatory hiring and promotion practices concerning black and female employees. (*Id.*). In response, his coworkers ostracized and ignored Carpenter. (*Id.* at pp. 10-11). According to Carpenter, the human resources staff stopped consulting him and went over his head or to other departments, started ignoring his direction and communications, and excluded him from meetings, including those for the Joint Explosives Committee. (*Id.* at p. 11).

Fed up, on March 12, 2021, Carpenter filed charges of retaliation and discrimination related to race and age, nine with the IDHR and one with the Office of Federal Contract Compliance Programs ("OFCCP"), identifying all defendants as respondents. (*Id.* at p. 11; Docs. 24-1, 24-2). After Carpenter filed these charges, the harassment and job interference persisted. (Doc. 24, p. 11).

A couple months later, in May 2021, Hirschberg purportedly instructed one of Carpenter's subordinates to conduct surveillance on another employee without consulting or advising Carpenter. (*Id.* at p. 6). Once Carpenter caught wind of this activity, he reminded Hirschberg to consult him for any security activity as he maintained responsibility for ensuring Olin's compliance with all policies, laws, and regulations regarding any of these activities. (*Id.*).

Carpenter states that Defendants avoided him and ignored his authority and responsibility to investigate employee complaints, including discrimination. (*Id.* at p. 12). After Mitchell complained to and sought assistance from Carpenter, her supervisors (Toni

Whaley and Dee Epps) admonished her for contacting Carpenter. (*Id*.). They instructed Mitchell to raise her concerns with them. (*Id*.). In March 2022, after receiving a complaint of discrimination from another employee, Carpenter launched an investigation as a routine part of his role. (*Id*.). But Haskins and Megan Rosenberg (Senior Director of Corporate Ethics for Olin) commandeered the investigation. (*Id*.). Around this same time, Carpenter led a union grievance meeting when another employee hurled abusive and obscene language towards him. (*Id*.). Carpenter complained to Haskins to no avail. (*Id*. at p. 13). Carpenter also alleges that Defendants reduced his staff for six months and diminished his authority in leading union contract negotiations. (*Id*.). As a result of these alleged actions, it became difficult for employees to report discrimination, and Carpenter felt that employees lost confidence in him as an HR director. (*Id*.).

In May 2022, Carpenter filed another charge against Olin for race-based discrimination and retaliation for engaging in protected activity. (*Id*.; Doc. 24-11). The next month, Whaley, Hirschberg, and Epps investigated an improperly issued "hot work safety permit," that allowed another employee to work in the Primer Island Department, a production area with additional safety protocols due to the highly explosive mix process. (Doc. 24, pp. 13-14). Even though the investigation fell under the purview of the Joint Explosive Committee and concerned security, Carpenter was excluded. (*Id.* at p. 14). The employees responsible for the improperly issued permit, in violation of Olin's policies, were both white. (*Id.*). To Carpenter's knowledge, neither employee received discipline for this violation of Olin's safety policies, whereas two black employees were previously disciplined for less serious safety violations of wearing earbuds and bumping into another

employee while carrying an explosive primer mix. (*Id.*). On June 15, 2022, Carpenter emailed Haskins about the lack of discipline and expressed his opinion that there was an unacceptable appearance that Olin only disciplined black employees but not white employees. (*Id.* at pp. 14-15). The next day, Haskins terminated Carpenter. (*Id.* at p. 15). Haskins claimed that Carpenter failed to perform his duties, provided false information in a training session resulting in a lawsuit, and threatened a former supervisor. (*Id.*). Carpenter read between the lines. (*Id.*). He suspects that Defendants fired him in retaliation for his ongoing efforts to oppose racial discrimination and because of his race. (*Id.*).

Now, Carpenter sues Olin Corporation (Counts I, II, III, XII, and XIII), Winchester Ammunition (Counts IV, V, VI, XIV, and XV), and Olin Winchester (Counts VII, VIII, IX, XVI, and XVII) for discrimination and retaliation under the IHRA and Title VII, along with retaliation under 42 U.S.C. § 1981. (*Id.* at pp. 15-22, 24-28). He also sues Dave Haskins (Counts X and XI) for retaliation under the IHRA and 42 U.S.C. § 1981. (*Id.* at pp. 22-24). In response to the complaint, Defendants filed a Motion to Dismiss under Federal Rule of Civil Procedure 8(a)(2) and 12(b)(6). (Docs. 27; 28). Carpenter filed a timely response (Doc. 31), to which Defendants filed a timely reply. (Doc. 32). For the reasons set forth below, the motion is granted in part and denied in part.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), "a pleading must contain a short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (internal quotation marks omitted). The pleading standard announced in Rule 8 "does not require 'detailed factual allegations,' but it

demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678. (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)).

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). To survive a Rule 12(b)(6) motion, a plaintiff only needs to allege enough facts to state a claim for relief that is plausible on its face. *Twombly*, 550 U.S. at 570. A plaintiff need not plead detailed factual allegations, but must provide "more than labels and conclusions, and a formulaic recitation of the elements." *Id.* at 555.

In deciding a motion to dismiss under Rule 12(b)(6), a court accepts as true all well-pleaded facts in the complaint and draws all reasonable inferences in the plaintiff's favor. *Burke v. 401 N. Wabash Venture, LLC*, 714 F.3d 501, 504 (7th Cir. 2013). Taken together, the factual allegations contained within the complaint must "raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (internal citations omitted).

### DISCUSSION

Carpenter anchors his claims for race-based discrimination and retaliation in three statutes: Title VII, 42 U.S.C. § 1981, and the IHRA. Title VII prohibits employers from engaging in various unlawful employment practices "because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Employers are also barred from discriminating against an employee for making a charge, testifying, assisting, or participating in any manner in an investigation, proceeding, or hearing. 42 U.S.C. § 2000e–3(a); *Volling v. Kurtz Paramedic Servs., Inc.*, 840 F.3d 378, 382 (7th Cir. 2016). Applicable in

the employment context, Section 1981 bars discrimination based on race or national origin in "mak[ing] and enforc[ing] contracts." 42 U.S.C. § 1981. Likewise, the IHRA forbids employers from engaging in harassment or acting with respect to promotion, discipline, or privileges or conditions of employment, "on the basis of unlawful discrimination[.]" 775 ILCS 5/2–102(A). Retaliation is also a cognizable claim under § 1981 and the IHRA. *Bagwe v. Sedgwick Claims Mgmt. Servs., Inc.*, 811 F.3d 866, 887 (7th Cir. 2016). As a preliminary matter, each of these statutes generally operates under the same standard and evidentiary rubric, so they need not be analyzed separately. *See Hoosier v. Greenwood Hosp. Mgmt. LLC*, 32 F. Supp. 3d 966, 975 (N.D. Ill. 2014) (citing *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 403 (7th Cir. 2007)); *see also Johnson v. City of Fort Wayne, Ind.*, 91 F.3d 922, 940 (7th Cir. 1996) ("Although section 1981 and Title VII differ in the types of discrimination they proscribe, the methods of proof and elements of the case are essentially identical."); *Zaderaka v. Illinois Hum. Rts. Comm'n*, 545 N.E.2d 684, 687 (Ill. 1989) (employing "the analytical framework…addressing claims brought under Title VII" to evaluate an employment discrimination claim under the IHRA). As such, where the causes of action overlap, the Court will separate its discussion of the claims by category (race-based discrimination and retaliation) rather than by statute.

## I. Dismissal Under Rule 8(a)

According to Defendants, Carpenter's complaint violates Federal Rule of Civil Procedure 8 by failing to provide a short and plain statement of his claims showing that he is entitled to relief. *See* FED. R. CIV. P. 8(a)(2). Defendants contend that Carpenter's 28- page complaint, consisting of 149 paragraphs, 17 enumerated counts, and 18 attached exhibits

(adding 192 additional pages), wields a "kitchen sink" pleading approach, setting forth every slight he potentially suffered. Defendants also lament that the complaint contains no discernable framework or timeline and that it reads in a confusing, rambling manner.

Where a lengthy complaint, even with superfluous matter, provides the defendant notice of the plaintiff's claims, dismissal is inappropriate under Rule 8. *Stanard v. Nygren*, 658 F.3d 792, 797-98 (7th Cir. 2011). Plainly stated, "undue length alone ordinarily does not justify the dismissal of an otherwise valid complaint." *Id*. at 797. If undue length is paired with some other insufficiency, like unintelligibility or incomprehensibility, a complaint may be justifiably rejected pursuant to Rule 8. *Id*. at 797-98.

To say that Defendants' argument is an overstatement is an understatement. The Court finds it surprising that Defendants could devise 20 pages of developed argument in their Motion to Dismiss against an entirely incomprehensible complaint. Clearly, Defendants understand the types of claims Carpenter brings against them, and to some extent, the relevant events giving rise to such claims. Moreover, Carpenter's complaint does not fall within the realm of unintelligibility and, as discussed below, his complaint successfully withstands most of Defendants' arguments for dismissal. The Court accepts that the complaint is somewhat lengthy, especially considering the attached exhibits. But those exhibits are provided to establish that Carpenter exhausted the relevant administrative remedies necessary to pursue his claims in federal court. Demonstrating compliance with this requirement surely cannot be used against him under Rule 8. Despite Defendants' contentions, the pleading requirements announced in Rule 8 impose no duty on a plaintiff to plead facts chronologically or in a specific organizational manner. In short,

dismissal of Carpenter's complaint is not appropriate under Rule 8.

## II.     Exhaustion for Claims Based on Termination

Defendants next argue that Carpenter failed to exhaust his claims specifically related to his termination (as opposed to other adverse actions alleged). While Carpenter filed many charges with multiple agencies, including OFCCP, IDHR, and EEOC, Defendants contend that Carpenter failed to allege that he received, or to attach, a right-to-sue notice for the charge associated with his termination, purportedly filed on June 27, 2022. Without a right-to-sue letter or an IDHR determination as to Carpenter's termination-related claims, Defendants urge that he failed to exhaust his administrative remedies as to such claims. As such, Defendants assert that, to the extent Carpenter's claims reference his termination, Counts I, II, IV, V, VII, VIII, and XII-XVII should be dismissed.

The IHRA permits a complainant to a commence civil action within 90 days of either the issuance of the IDHR's report (or notice of dismissal) or the conclusion of a one-year period without the issuance of any report. 775 ILCS 5/7A-102(D), (G)(2). "Before bringing a Title VII claim, a plaintiff must first exhaust his administrative remedies by filing charges with the EEOC and receiving a right to sue letter." *Chaidez v. Ford Motor Company,* 937 F.3d 998, 1004 (7th Cir. 2019). Of course, a plaintiff may only bring claims included in the underlying EEOC charge or claims reasonably related to the allegations in the charge. *Id.*

Here, Carpenter filed several IDHR charges, however, none describe his termination. (*See* Docs. 24-2 to 24-11). But Carpenter filed a charge of discrimination with the EEOC that did reference his termination and the events leading up to it. (Doc. 24-12). It appears that the EEOC Notice of Right-to-Sue attached to the complaint could correspond

with the Charge of Discrimination filed with the EEOC on June 27, 2022, which included claims related to Carpenter's termination. (Docs. 24-12; 24-18). As such, the Title VII claims related to termination are properly exhausted. Thus, to the extent that Counts XII-XVII include termination-related claims, the administrative exhaustion requirement is satisfied. As for the charges submitted to the IDHR, the Court agrees with Defendants. The attached charges, the last of which was filed in May 2022, only relate to events prior to Carpenter's termination. (Docs. 24-2 to 24-11). Thus, the termination-related claims brought under the IHRA were not exhausted before the IDHR, or at least such exhaustion is not made clear through allegations in the complaint or the attached exhibits. In addition, no allegations connect Carpenter's EEOC charge filed in June 2022 to any IHRA claim or review by the IDHR. (*See* Docs. 24-12 to 24-17).

Accordingly, the Court dismisses any termination-related claims under the IHRA housed in Counts I, II, IV, V, VII, and VIII. To the extent possible, the Court grants Carpenter leave to amend these claims with respect to exhaustion on or before April 8, 2024.

### III.    Race-based Discrimination

To substantiate a claim of race discrimination, a plaintiff must show, either through direct or circumstantial evidence, that an employer's decision to take an adverse job action was motivated by an impermissible purpose, such as race or national origin. *Adams v. Wal-Mart Stores, Inc.*, 324 F.3d 935, 938-39 (7th Cir. 2003). But simple claims of race or sex discrimination are subject to a "minimal pleading standard." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008) (citing *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 781-

82 (7th Cir. 2007)). The Seventh Circuit has reiterated that to adequately *plead* a claim of race-based discrimination, "a plaintiff. . . may allege [such] claims quite generally." *Tamayo*, 526 F.3d at 1081. As such, "[a] complaint need not allege all, or *any*, of the facts logically entailed by the claim, and it certainly need not include evidence." *Id.* (internal quotation marks omitted). Put another way, to survive a motion to dismiss, "[a] plaintiff alleging race discrimination need not allege each evidentiary element of a legal theory." *Freeman v. Metropolitan Water Reclamation Dist. of Greater Chicago*, 927 F.3d 961, 965 (7th Cir. 2019); *see also Kaminski v. Elite Staffing, Inc.*, 23 F.4th 774, 777 (7th Cir. 2022) ("[A] plaintiff need not allege facts aligning with her claim's every element, which she will have to prove for her claim to survive summary judgment."). Specifically, "to prevent dismissal under Rule 12(b)(6), a complaint alleging [employment] discrimination need only aver that the employer instituted a (specified) adverse employment action against the plaintiff on the basis of [his protected status]." *Tamayo*, 526 F.3d at 1084. "[O]nce a plaintiff alleging illegal discrimination has clarified that it is on the basis of [his] race, there is no further information that is both easy to provide and of clear critical importance to the claim." *Concentra*, 496 F.3d at 782.

Defendants argue that the majority of the conduct described in the complaint does not reach the level of an adverse employment action, like the suspension without pay or comments by coworkers. In Defendants' view, the only possible adverse action alleged is failure to promote. But Defendants urge that Carpenter failed to plausibly allege facts supporting that this action was based on his race. Defendants assert that most incidents provided by Carpenter involve his relationship with his superiors and coworkers, but the

alleged comments and interactions cannot reasonably demonstrate harassing conduct, let alone harassment based on race. Further, Defendants emphasize that Carpenter does not adequately allege a hostile work environment. Regarding Carpenter's claims of altered job duties, Defendants argue that he likewise failed to connect any such conduct to his race.

In response, Carpenter points to his allegations that demonstrate a continual effort by Defendants to undermine his authority, interfere with his job performance, portray him negatively to his coworkers, and press him to stop making waves. Carpenter argues that he expressly alleged that Defendants subjected him to this hostile work environment, including his brief suspension, because of his race. In defense of his failure to promote claim, Carpenter points to his allegations that Defendants misrepresented the availability of the position and later offered the role to a less-qualified, non-black employee. Carpenter also highlights that many of the orders cited by Defendants address cases on summary judgment, not dismissal, where courts evaluate a plaintiff's actual proof rather than the sufficiency of a complaint.

In their motion, Defendants demand far too much specificity from Carpenter at the pleading stage. In the employment discrimination context, the Seventh Circuit has explicitly cautioned district courts against evaluating complaints in a manner that requires a plaintiff to plead a prima facie case or align allegations with each element of the claim. *See Kaminski*, 23 F.4th at 777. Here, Carpenter alleged discrimination through a hostile work environment (a years-long campaign of harassment intended to ostracize Carpenter, undermine his authority, interfere with his ability to successfully perform his job, exclude him from participation in relevant meetings, spread false information about him,

intimidate and humiliate him, etc.), failure to promote him to a Vice President position for which he was qualified, and his ultimate termination. Carpenter connects these to his race through explicit allegations in the complaint. Defendants push for the Court to require stronger allegations connecting race to the alleged adverse actions, but it is difficult to imagine such a heightened pleading requirement in practice. Under Defendants' view, only those subject to the extremely rare scenario where an employer overtly declares its racist, sexist, ableist, or other impermissible motivations for taking adverse employment action could sufficiently plead a discrimination claim. Of course, reality counsels that racism, and other forms of bias, often present subtly, veiled in coded language or otherwise disguised.

Defendants also argue that Carpenter's chronology of events defeat his attempts to causally connect adverse actions to purported discrimination. While the complaint does not provide an air-tight chronology of events, the allegations generally describe conduct sustained over a period of years with more specific dates related to some of the conduct. But again, at the pleading stage, Carpenter is under no obligation to temporally connect every allegation or to establish causation via timing. He must simply allege enough facts to allow for a plausible inference that the adverse action could be connected to his protected characteristics and raise a right to relief above the speculative level. Carpenter has done so. His complaint contains allegations that describe how he was aggrieved (subject to harassment and a hostile work environment in various ways and passed over for promotion to a non-black, less qualified individual) and that this treatment was due to his race.

Naturally, the course of litigation will reveal whether Carpenter can prove the necessary elements to substantiate his claims. But his allegations suffice to initiate Carpenter's lawsuit and survive dismissal at the pleading stage.

## IV.     Retaliation

The Court's analysis of Carpenter's retaliation claims overlaps with its review of his discrimination claims above. To sufficiently plead a retaliation claim, a plaintiff must allege that he "engaged in statutorily protected activity and was subjected to adverse employment action as a result of that activity, though [he] need not use those terms, of course." *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1029 (7th Cir. 2013). Protected activity is some step in opposition to a form of discrimination prohibited by the relevant statute. *Ferrill v. Oak Creek-Franklin Joint School District*, 860 F.3d 494, 501 (7th Cir. 2017). In the retaliation context, "the challenged action must be one that a reasonable employee would find to be materially adverse such that the employee would be dissuaded from engaging in the protected activity." *Lewis v. City of Chicago*, 496 F.3d 645, 655 (7th Cir. 2007) (internal citation omitted).

Defendants argue that Carpenter's allegations fail to demonstrate that he engaged in protected activity, suffered adverse actions, and that both are causally connected or that the perpetrators of the adverse actions knew of the protected activity. To the contrary, Carpenter argues that he engaged in several protected activities. He also asserts that he plausibly pleaded facts demonstrating that Defendants created a harassing, intimidating, and hostile work environment because he opposed race and sex discrimination, which were designed to dissuade him from engaging in such opposition.

Again, Defendants attempt to hold Carpenter to a higher pleading standard than is required to state an actionable claim for retaliation under Title VII, § 1981, or the IHRA. Carpenter alleges many instances of engaging in protected activity such as participating in an EEOC investigation for an employee's discrimination charge, providing sworn testimony in another sex discrimination investigation, investigating ongoing discriminatory hiring and promotion practices of black and female employees, voicing his disagreement with the company's practice of punishing black employees more harshly for less severe safety violations than that of white employees to his supervisor, and filing charges of discrimination and retaliation with the IDHR and OFCCP. Carpenter also plausibly alleges that Defendants engaged in conduct that would dissuade a reasonable employee from engaging in such protected activity, through the hostile work environment, failure to promote, and ultimate termination.

Defendants challenge Carpenter's specific allegations of hostile work environment as commonplace management decisions, petty slights, and isolated incidents. As discussed above relating to the discrimination claims, Carpenter has plead enough to demonstrate hostile work environment and ongoing harassment. He alleged that Defendants repeatedly undermined his authority, labeled him as a troublemaker and renegade, excluded him from relevant meetings, stripped him of responsibilities, suspended him under false pretenses, and attempted to tarnish his reputation among his coworkers, among other allegations. Perhaps, when pressed to *prove* his claims at a later stage in litigation, the evidence may show this conduct amounted to isolated incidents, mere inconveniences, routine workplace decisions, or petty slights. Without the benefit of discovery, however,

Carpenter is not required to *plead* every instance contributing to the hostile environment or harassment to survive dismissal, nor does he have the appropriate opportunity at the pleading stage to paint the entire picture in its proper context to substantiate his claims for such an environment or conduct. Carpenter has alleged enough facts to put Defendants on notice as to the relative protected activity and challenged retaliatory actions giving rise to his claims, which is all that is required at this stage.

While Carpenter specifically alleges that he assisted employees with discrimination claims as early as 2017, which happened years before the hostile work environment supposedly began or the purported failure to promote occurred, this is not fatal to his claims. He alleges many other instances of protected activity, including his ongoing efforts to investigate and shed light on discrimination at the company, his participation in a specific investigation in 2019, his IDHR and OFCCP charges, and an email to his supervisor the day before his termination (for his Title VII claims). Defendants argue that, to sustain a retaliation claim, Carpenter must assert facts showing that he alerted Defendants to his opposition of unlawful employment practices separate and apart from his normal job responsibilities as an HR director. To support this argument, Defendants rely on persuasive authority from two other federal circuits, but they acknowledge this rule has not been considered by the Seventh Circuit. Even if the Court adopted the so-called "manager rule," it is not possible, at the pleading stage, to determine what actions fell within or outside his job responsibilities as an employee responsible for personnel matters. The Court declines to dismiss Carpenter's complaint on this basis.

Once more, Carpenter may fail to eventually prove his claims of retaliation, but his complaint sufficiently states a claim to initiate this lawsuit and survive dismissal at the pleading stage.

### V.        IHRA Claims against Individual Defendant Haskins

In Count X, Carpenter brings a retaliation claim against individual defendant, Dave Haskins, under the IHRA. Defendants point to Illinois appellate case law and several federal district court cases to argue that the IHRA does not provide for individual liability (when an alleged act falls within the scope of the individual's employment). In response, Carpenter agrees that state court interpretation of the IHRA is binding. He argues, however, that with no Illinois Supreme Court decision on point, this Court can either follow the Illinois appellate courts or rely on a convincing reason to predict that the Illinois Supreme Court would likely disagree with the appellate courts' interpretation. Such a convincing reason exists, according to Carpenter, because the plain language of the IHRA specifically provides for individual liability.

Multiple Illinois appellate courts have rejected the notion that the IHRA provides for individual liability because, by its language, a "person" is prohibited from retaliating against another. *See Winston v. Meyers,* 2022 IL App (1st) 220368-U, ¶ 23 (citing *Watkins v. Office of State Appellate Defender*, 2012 IL App (1st) 111756, ¶ 37); *Kozlowski v. Greenridge Farm, Inc.*, 338 F. Supp. 3d 828, 835 (N.D. Ill. 2018) ("[T]he Appellate Court of Illinois has held that in IHRA retaliation cases…the charge must be against the employer and not against the official personally."). In cases charging retaliation where a company official acts in the name of the employer, the claims must be against the employer, not the official

personally, unless the conduct was personally motivated or done without knowledge or consent from the employer. *Anderson v. Modern Metal Products*, 711 N.E.2d 464, 471 (Ill. App. Ct. 1999). Federal district courts in Illinois have endorsed this interpretation of the IHRA. *See Robertson v. Lofton*, No. 13 C 3205, 2013 WL 5796780, at *3 (N.D. Ill. Oct. 25, 2013); *see also Zayadeen v. Abbott Molecular, Inc.*, No. 10 C 4621, 2013 WL 361726, at *5 (N.D. Ill. Jan. 30, 2013) ("[Section] 1981 provides for individual liability while Title VII and the IHRA do not."); *Dalton v. Sweet Honey Tea, Inc.*, No. 23 CV 01793, 2023 WL 8281524, at *2 n. 2 (N.D. Ill. Nov. 30, 2023) ("[T]he IHRA generally only allows for individual liability for agents of an employer that have themselves engaged in sexual harassment."); *Ross v. Univ. of Chicago*, No. 18-CV-4200, 2018 WL 6448464, at *10 (N.D. Ill. Dec. 10, 2018) ("[A] supervisor cannot be held individually liable for claims asserted under…the IHRA."); *but see Nieman v. Hale*, 541 F. App'x 693, 695-98 (7th Cir. 2013) (non-precedential opinion allowing claims for individual liability where an employment agent, rather than employer's own employee, committed the challenged action).

The Court sees no compelling reason to interpret the IHRA differently than the Illinois appellate courts. Because the Complaint does not allege that retaliation by Haskins occurred outside the scope of his employment, was personally motivated, or done without his employer's knowledge or consent, the Court agrees with Defendants that the IHRA claim against Haskins (Count X) should be dismissed. Dismissal is without prejudice, and to the extent possible, the Court grants Carpenter leave to amend his IHRA claim against Haskins on or before April 8, 2024.

CONCLUSION

For these reasons, the Motion to Dismiss (Doc. 27) is **GRANTED in part** and **DENIED in part.** Any *termination-related* claims under the IHRA within Counts I, II, IV, V, VII, and VIII are **DISMISSED**. Moreover, Count X (for retaliation under the IHRA) is **DISMISSED** against Defendant Haskins. If Carpenter can reasonably do so, the Court **GRANTS** leave to amend these claims on or before **April 9, 2024.** In all other respects, Defendants' Motion to Dismiss is **DENIED**.

    **IT IS SO ORDERED.**

    **DATED:   March 26, 2024**

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**